UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**
RABINOWITZ, LUBETKIN & TULLY, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey  07039
(973) 597-9100
Jeffrey A. Cooper, Esq.
Barry J. Roy, Esq.
Attorneys for Enor Corporation
Debtor-in-Possession

Order Filed on August 3, 2016
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

ENOR CORPORATION,

             Debtor-in-Possession.

Case No. 15-32714 (VFP)

Judge: Honorable Vincent F. Papalia

Chapter 11

**Hearing Date and Time: August 2, 2016
at 10:00 a.m.**

## ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING OTHER RELATED RELIEF

The relief set forth on the following pages, numbered two (2) through twenty (20), is

hereby **ORDERED**.

**DATED: August 3, 2016**

_____
Honorable Vincent F. Papalia
United States Bankruptcy Judge

(Page 2)

| | |
|---|---|
| Debtor: | ENOR CORPORATION |
| Case No. | 15-32714 (VFP) |
| Caption of Order: | ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING OTHER RELATED RELIEF |

THIS MATTER having been opened to the Court by Rabinowitz, Lubetkin & Tully, L.L.C., attorneys Enor Corporation, the within debtor and debtor-in-possession (the "**Debtor**"), upon the motion (the "**Sale Motion**")[1] for the entry of an order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (as amended from time to time, the "**Bankruptcy Rules**") (i) approving the Asset Purchase Agreement attached hereto as **Exhibit B** ("**APA**") and authorizing the sale of its Toy Business assets free and clear of all liens, claims, interests and encumbrances (the "**Sale**"); (ii) authorizing assumption and assignment of certain related executory contracts and unexpired leases; and (iii) granting other related relief; and the Court having reviewed the Sale Motion and the Court having found that (i) the Court has jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334, (ii) venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409, (iii) this is a core proceeding pursuant to 28 U.S.C. § 157(b), (iv) notice of the Sale Motion was sufficient under the circumstances; and after due deliberation the Court having determined that the relief requested in the Sale Motion is in the best interests of the Debtor, its estate and its creditors; and good and sufficient cause having been shown; it is hereby

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Sale Motion.

(Page 3),
Debtor:                    ENOR CORPORATION
Case No.                   15-32714 (VFP)
Caption of Order:          ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                           SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                           CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                           ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                           LEASES; AND (III) GRANTING OTHER RELATED RELIEF

## FOUND AND DETERMINED THAT:[2]

A.    **Jurisdiction**:  This Court has jurisdiction to consider the Sale Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334.  Approval of the APA, and the

transactions contemplated thereby is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and

(O).

B.    **Venue**:  Venue of this case in this District is proper pursuant to 28 U.S.C.

§§ 1408 and 1409.

C.    **Statutory Predicates**:  The statutory predicates for the approval of the APA and

transactions contemplated therein are sections 105, 363 and 365 of the Bankruptcy Code and

Rules 2002, 6004 and 6006 of the Bankruptcy Rules.

D.    **Notice**:  The Debtor's notice of the Sale Motion and the hearing to consider the

relief requested in the Sale Motion (the **"Sale Hearing"**) is appropriate and reasonably calculated

to provide all interested parties with timely and proper notice, a reasonable opportunity to be

heard and no other or further notice is required.

E.    **Marketing Process**:  As demonstrated by the (i) Certification of Steven C.

Udwin, (ii) the testimony or other evidence proffered or adduced at the Sale Hearing, and (iii) the

---

[2]  The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law
pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the
extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent
any of the following conclusions of law constitute findings of fact, they are adopted as such.

(Page 4)
Debtor:              ENOR CORPORATION
Case No.             15-32714 (VFP)
Caption of Order:    ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                     SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                     CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                     ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                     LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

representations of counsel made on the record at the Sale Hearing, the Debtor has thoroughly

marketed the Purchased Assets. The Debtor and the Purchaser have respectively negotiated and

undertaken their roles leading to the Sale and entry into the APA in a diligent, noncollusive, fair

and good faith manner.

F.    **Highest and Best Offer**: The APA, including the form and total consideration to

be realized by the Debtor pursuant to the APA: (i) is the highest and best offer received by the

Debtor for the Purchased Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the

Debtor, its estate, its creditors and all other parties in interest. There is no legal or equitable

reason to delay entry into the APA, and the transactions contemplated therein, including, without

limitation, the Sale.

G.    **Business Judgment**: The record establishes that there are: (i) good, valid and

sound business purposes for the Sale of the Purchased Assets, and (ii) compelling circumstances

for the Debtor's entry into the APA and the consummation of the transactions contemplated

thereby pursuant to section 363(b) of the Bankruptcy Code prior to confirmation of a Chapter

11 plan. The Debtor's decision to enter into the APA represents a reasonable exercise of the

Debtor's sound business judgment consistent with its fiduciary duties and is in the best interests

of the Debtor, its estate, its creditors and all other parties in interest.

(Page 5)
Debtor:                ENOR CORPORATION
Case No.               15-32714 (VFP)
Caption of Order:      ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                       SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                       CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                       ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                       LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

H.    **Personally Identifiable Information**: The transactions contemplated by the

APA do not include the sale or lease of personally identifiable information, as defined in section

101(41A) of the Bankruptcy Code.

I.    **Sale Free and Clear**: A sale of the Purchased Assets other than one free and

clear of liens, claims, interests, encumbrances and defenses (including, without limitation, rights

of setoff and recoupment), including, without limitation, security interests of whatever kind or

nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust,

hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits,

licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or

domestic governmental entity, taxes (including federal, state and local taxes), licenses,

covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for

reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax,

labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and

claims, to the fullest extent of the law, in each case, of any kind or nature (including, without

limitations, all "claims" as defined in section 101(5) of the Bankruptcy Code, known or

unknown, whether pre-petition, post-petition, secured or unsecured, choate or inchoate, filed or

unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed

or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material,

statutory or non-statutory, legal or equitable (collectively, "**Encumbrances**") and without the

(Page 6):
Debtor:                    ENOR CORPORATION
Case No.                   15-32714 (VFP)
Caption of Order:          ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                           SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                           CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                           ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                           LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

protections of this Order would hinder the Debtor's ability to obtain the consideration provided

for in the APA and, thus, would impact materially and adversely the value that the Debtor's

estate would be able to obtain for the Sale of the Purchased Assets. But for the protections

afforded to Purchaser under the Bankruptcy Code and this Order, Purchaser would not have

offered to pay the consideration contemplated in the APA. In addition, each entity with an

Encumbrance on the Purchased Assets: (i) has consented to the Sale or is deemed to have

consented to the Sale, (ii) could be compelled in a legal or equitable proceeding to accept money

satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the

Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section

363(f)(1)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances who

did not object, or who withdrew their objections, to the Sale Motion are deemed to have

consented pursuant to section 363(f)(2) of the Bankruptcy Code. Therefore, approval of the

APA and consummation of the Sale free and clear of Encumbrances is appropriate pursuant to

section 363(f) of the Bankruptcy Code and is in the best interest of the Debtor, its estate, its

creditors and all other parties in interest.

　　　J.　　**Arms-Length Sale**: The consideration to be paid by Imperial Toy LLC (the

"**Purchaser**") under the APA regarding the Purchased Assets was negotiated at arm's length

with the Debtor and constitutes reasonably equivalent value and fair and adequate consideration

for the Purchased Assets under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, the

(Page 7)
Debtor:                    ENOR CORPORATION
Case No.                   15-32714 (VFP)
Caption of Order:          ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                           SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                           CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                           ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                           LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

Uniform Fraudulent Conveyance Act, the Uniform Voidable Transactions Act and the laws of

the United States, any state, territory, possession thereof and the District of Columbia. The terms

and conditions set forth in the APA are fair and reasonable under the circumstances and were not

entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding

the Debtor or its creditors under any applicable laws.

  K.  **Good Faith**: The Debtor and Purchaser, and their respective members,

shareholders, offices, directors, employees, agents, professionals and representatives, actively

participated in the Sale process and in good faith. The APA was negotiated and entered into

based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is

used in section 363(m) of the Bankruptcy Code. Purchaser shall be protected by section 363(m)

of the Bankruptcy Code in the event that this Order is reversed or modified on appeal. The

Debtor was free to deal with any other party interested in buying the Purchased Assets. Neither

the Debtor nor Purchaser have engaged in any conduct that would cause or permit the Sale, the

APA or any related action or the transaction contemplated thereby to be avoided under section

363(n) of the Bankruptcy Code or would prevent the application of section 363(m) of the

Bankruptcy Code. Purchaser has not acted in a collusive manner with any person and was not

controlled by any agreement among any other potential bidder(s). Purchaser's prospective

performance and payment of the amounts owing under the APA are in good faith and for valid

business purposes and uses.

(Page 8)
Debtor:                     ENOR CORPORATION
Case No.                    15-32714 (VFP)
Caption of Order:           ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                            SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                            CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                            ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                            LEASES; AND (III) GRANTING OTHER RELATED RELIEF

L.    **Insider Status**: Purchaser is not an "insider" as that terms is defined in section

101(31) of the Bankruptcy Code.  No common identity of directors, members or controlling

stockholders exists between the Debtor and Purchaser.

M.    **Title to Purchased Assets**:  The Debtor has all right, title, and interest in the

Purchased Assets required to transfer and convey the Purchased Assets as contemplated by the

APA.

N.    **Corporate Authority**:  The Debtor has full authority and power to execute and

deliver the APA and related agreements and all other documents contemplated by the APA, to

perform the obligations thereunder, and to consummate the transactions contemplated thereby

and the execution, delivery and performance of the APA and the documents to be executed and

delivered by the Debtor related thereto, and the sale of the Purchased Assets, pursuant to the

APA, has been duly and validly authorized by all necessary action.  No other consents or

approvals are necessary or required for the Debtor to enter into the APA, perform its obligations

thereunder and consummate the transactions contemplated thereby.

O.    **Adequate Assurance**:  Adequate assurance exists that Purchaser will fully

perform all future obligations under the executory contracts and unexpired leases to be assumed

(collectively, the "**Assumed Contracts**") by the Debtor and assigned to Purchaser under the

APA. Assumption and assignment of the Assumed Contracts as identified on **Exhibit A** hereto,

(Page 9)
Debtor:                  ENOR CORPORATION
Case No.                 15-32714 (VFP)
Caption of Order:        ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                         SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                         CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                         ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                         LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

is an appropriate exercise of the Debtor's business judgment. The Debtor believes that each of

the Assumed Contracts is valid and enforceable.

P.    **No Successor Liability**: Purchaser is not holding itself out to the public as a

continuation of the Debtor or its estate, and neither Purchaser nor its affiliates, successors or

assigns, as a result of any action taken in connection with the Sale of the Purchased Assets:

(i) are a successor to the Debtor; (ii) have, de facto or otherwise, merged with or into the Debtor;

or (iii) are a continuation or substantial continuation of the Debtor or any enterprise of the

Debtor. No sale, transfer, or other disposition of the Purchased Assets pursuant to the APA will

subject Purchaser to any liability for any claims, liens, obligations or Encumbrances asserted

against the Debtor or the Debtor's interests in such Purchased Assets by reason of such transfer

under any laws, including, without limitation, any bulk-transfer laws or any theory of successor

liability, product line, de facto merger or substantial continuity or similar theories. Purchaser is

not a successor to the Debtor or its estate.

Q.    **Retention of Jurisdiction**: It is necessary and appropriate for the Court to retain

jurisdiction to, among other things, interpret and enforce the terms and provisions of this Order

and the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any

way to, or affecting, any of the transactions contemplated under the APA, including, without

limitation, the assumption and assignment of the Assumed Contracts , as applicable, to

Purchaser.

(Page 10)

| | |
|---|---|
| Debtor: | ENOR CORPORATION |
| Case No. | 15-32714 (VFP) |
| Caption of Order: | ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING OTHER RELATED RELIEF |

R.    **No Sub Rosa Plan**: Entry into the APA and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtor's creditors, nor impermissibly dictates the terms of a plan of reorganization for the Debtor.  Entry into the APA does not constitute a sub rosa Chapter 11 plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The relief requested in the Sale Motion is GRANTED as set forth herein.

2.    All objections and responses to the Sale Motion that have not been overruled, withdrawn, waived, settled or resolved, and all reservations of rights included therein, are hereby overruled and denied.

3.    The Purchaser's offer for the Purchased Assets, as embodied in the APA, is the highest and best offer for the Purchased Assets under the circumstances of this case and is hereby approved.

4.    The APA is hereby approved pursuant to section 363(b) of the Bankruptcy Code in its entirety and incorporated herein by reference and the Debtor is authorized to consummate and perform all of its obligations under the APA and to execute such other documents and take such other actions as are necessary or appropriate to effectuate the APA without further order of the Court.  The failure specifically to include any particular provisions of the APA or any of the documents, agreements or instruments executed in connection therewith in this Order shall not diminish or impair the force of such provision, document, agreement or instrument, it being the

(Page 11)
Debtor:                  ENOR CORPORATION
Case No.                 15-32714 (VFP)
Caption of Order:        ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                         SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                         CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                         ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                         LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

intent of the Court that the APA and each document, agreement or instrument be authorized and

approved in its entirety.

     5.     Pursuant to section 363(f) of the Bankruptcy Code, the Purchased Assets are

being sold and transferred free and clear of all liens, claims, interests and Encumbrances,

including but not limited to any liens claimed by any federal, state or local taxing authority

(collectively, the "**Liens**") except as otherwise provided in the APA, with any and all such Liens

to attach to the proceeds of such Sale, minus the Holdback Amount, (the "**Sale Proceeds**") with

the same validity, priority, force and effect such Liens had on the Purchased Assets immediately

prior to the Sale and subject to the rights, claims, defenses, and objections, if any, of the Debtor

and all interested parties with respect to any such asserted Liens.  No liens shall attached to the

Holdback Amount until such funds are released to TD Bank pursuant to Section 11.2(c) of the

APA.

     6.     Except as expressly permitted by the APA as to any Liens, all persons and

entities, including, but not limited to, all debt security holders, equity security holders,

governmental, federal, state and local tax and regulatory authorities (to the fullest extent allowed

by applicable law), lenders, trade creditors, contract counterparties, customers, landlords,

licensors, employees, litigation claimants and other persons, holding Liens of any kind or nature

whatsoever against or in the Debtor or the Debtor's interests in the Purchased Assets (whether

known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent,

(Page 12)
Debtor:                ENOR CORPORATION
Case No.               15-32714 (VFP)
Caption of Order:      ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                       SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                       CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                       ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                       LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the

commencement of this Chapter 11 case, whether imposed by agreement, understanding, law,

equity or otherwise), arising under or out of, in connection with, or in any way relating to, the

Debtor, the Purchased Assets, the operation of the Debtor's businesses before the Closing (as

defined in the APA) or the transfer of the Debtor's interests in the Purchased Assets to the

Purchaser, shall not assert, prosecute or otherwise pursue any Liens against the Purchaser, its

property (including, without limitation, the Purchased Assets), its successors and assigns, or

interfere with the Purchaser's title to, use or enjoyment of the Purchased Assets, in each case,

without first obtaining an order of this Court after notice and a hearing permitting such Lien to

proceed.

     7.    The Debtor is authorized upon the Closing to immediately pay TD Bank NA

("**TD Bank**") the full amount of the Sale Proceeds via the Wire Instructions contained in

Schedule 4.3(a) of the APA (minus the Holdback Amount), for application in reduction of the

indebtedness owed by the Debtor to TD Bank. Thereafter, the Debtor may file a certified copy

of this Order with the appropriate clerk and/or record with the appropriate recorder to evidence

cancellation of those Liens and other Encumbrances of record with respect to the Purchased

Assets only. For avoidance of doubt, the cancellation of Liens and/or Encumbrances authorized

by this Order shall only extend to the Purchased Assets and shall not affect any other Liens or

Encumbrances held by TD against the Debtor or its property. For further avoidance of doubt,

(Page 13)
Debtor:                    ENOR CORPORATION
Case No.                   15-32714 (VFP)
Caption of Order:          ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                           SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                           CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                           ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                           LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

TD's Liens and Encumbrances shall attach to the Holdback Amount simultaneously with the

release of the Holdback Amount from escrow to the Persons and accounts set forth on Schedule

4.3(a) of the APA pursuant to Section 11.2(c) of the APA, but in no event shall TD's Liens and

Encumbrances attach to any portion of the Holdback Amount released to Purchaser pursuant to

Section 11.2(c) of the APA.

       8.     This Order is and shall be binding upon and govern the acts of all persons and

entities, including, without limitation, all filing agents, filing officers, title agents, title

companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative

agencies, governmental departments, secretaries of state, federal and local officials, and all other

persons and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or instruments, or

who may be required to report or insure any title or state of title in or to any lease; and each of

the foregoing persons and entities is hereby authorized to accept for filing from any and all of the

documents and instruments necessary and appropriate to consummate the transactions

contemplated by the APA.  Subject to the provisions of Paragraph 7, *supra*, Purchaser is

authorized to file a certified copy of this Order which, upon filing, shall be conclusive evidence

of the release and termination of any third parties' interest in the Purchased Assets, only.

       9.     To the greatest extent available under applicable law, Purchaser shall be

authorized, as of the date of the Closing, to operate under any license, permit, registration and

(Page 14)
Debtor:                ENOR CORPORATION
Case No.               15-32714 (VFP)
Caption of Order:      ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                       SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                       CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                       ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                       LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

governmental authorization or approval of the Debtor with respect to the Purchased Assets, and

all such licenses, permits, registrations and governmental authorizations and approvals are

deemed to have been, and hereby are, directed to be transferred to Purchaser as of the date of the

Closing.

10.    Consummation of the APA does not effect a de facto merger of the Debtor and

Purchaser or result in the continuation of the Debtor's business under Purchaser's control.

Purchaser is not (and shall not be deemed to be) the alter ego of or a successor in interest to the

Debtor.

11.    Except as expressly provided in the APA or this Order, Purchaser is not assuming

nor shall it or any affiliate of Purchaser be in any way liable or responsible, as a successor or

otherwise, for any liabilities, debts, or obligations of the Debtor in any way whatsoever relating

to or arising from the Debtor's ownership or use of the Purchased Assets prior to the

consummation of the transactions contemplated by the APA, or any liabilities calculable by

reference to the Debtor or its operations or the Purchased Assets, or relating to continuing or

other conditions existing on or prior to consummation of the transactions contemplated by the

APA, which liabilities, debts, and obligations are hereby extinguished insofar as they may give

rise to liability, successor or otherwise, against Purchaser or any affiliate of Purchaser.

12.    Subject to and conditioned upon the Closing of the Sale and payment of amounts

due under the APA, all requirements and conditions under sections 363 and 365 of the

(Page 15)
Debtor:             ENOR CORPORATION
Case No.            15-32714 (VFP)
Caption of Order:   ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                    SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                    CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                    ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                    LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

Bankruptcy Code for the assumption and assignment to Purchaser of the Assumed Contracts

have been satisfied. The Debtor is hereby authorized and directed to assume the Assumed

Contracts as set forth in the APA and to assign such Assumed Contracts to Purchaser, without

further application to or order of the Court. The counterparties to any Assumed Contract shall be

obligated to perform under their respective lease or contract, subject to the terms thereof. Except

as provided herein, any counterparty to any Assumed Contract that failed to file a timely

objection to the applicable cure schedule with respect to the *Notice Of Possible Assumption And*

*Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale*

*Of The Debtor's Toy Business Assets* filed and served by the Debtor on July 11, 2016 [Docket

No. 159] (the "**Cure Schedules**") shall not be permitted to claim that any additional amounts are

due or defaults exist, or additional conditions to assignment must be satisfied, other than the

Cure Costs set forth in the Cure Schedules or as set forth on **Exhibit A** hereto (with the Cure

Costs set forth on **Exhibit A** to control over the Cure Schedules), which are the sole amounts

necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure

all monetary defaults and pay all actual pecuniary losses under the Assumed Contracts. The

right to challenge the amounts reflected in the Cure Schedule, for any party that timely filed an

objection to the Cure Schedule, including any pending objections, shall be preserved, and shall

be addressed at a subsequent hearing, if such disputed Cure Costs cannot be resolved by the

parties.

(Page 16)
Debtor:                    ENOR CORPORATION
Case No.            .       15-32714 (VFP)
Caption of Order:       ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

13.     Upon the Closing, the Assumed Contracts identified on **Exhibit A** to this Order

shall be assumed by the Debtor, assigned to and vested in Purchaser. The Cure Cost identified

on the list attached hereto as **Exhibit A** shall be paid by the Debtor as a cure in accordance with

section 365(b)(1)(A) of the Bankruptcy Code. Each Assumed Contract assumed and assigned

pursuant to this Order shall vest in and be fully enforceable by Purchaser, except as modified by

the provisions of this Order. The amounts identified on **Exhibit A** are in full and final

satisfaction of all obligations and are full compensation to the counterparties for any pecuniary

losses under such contracts or leases pursuant to section 365(b)(1) of the Bankruptcy Code under

the respective Assumed Contract as of the Closing. On the Closing Date, with respect to the

Assumed Contracts, all applicable requirements of section 365 of the Bankruptcy Code have

been met, including the requirement that all defaults be cured and that adequate assurance of

future performance be provided. As of the Closing, except to the extent otherwise expressly

provided in the APA and this Order, the Debtor and Purchaser shall each be relieved and

discharged from any liability whatsoever, whether arising before or on the Closing Date, under

the Assumed Contracts other than Debtor's obligation to satisfy the Cure Costs listed in **Exhibit

A**.

14.     The Assumed Contracts shall be assigned to, and remain in full force and effect

for the benefit of Purchaser, in accordance with their respective terms, notwithstanding any

provision in any such lease agreement or contract (including, without limitation, an anti-

(Page 17)
Debtor:              ENOR CORPORATION
Case No.             15-32714 (VFP)
Caption of Order:    ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                     SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                     CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                     ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                     LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

assignment provision, or as described in sections 365(b)(2) and (f) of the Bankruptcy Code) that

prohibits, restricts, conditions, or limits such assignment or transfer.  Upon the Closing or

effectiveness of the assumption of any Assumed Contract in accordance with sections 363 and

365 of the Bankruptcy Code, Purchaser shall be fully and irrevocably vested with all rights, title

and interest of the Debtor and its estate under any applicable Assumed Contract.

15.     Pursuant to section 365(k) of the Bankruptcy Code, the Debtor and its estate shall

not be liable for any breach of the Assumed Contracts after the date of assignment to Purchaser.

16.     Except as otherwise provided herein, pursuant to sections 105(a), 363, and 365 of

the Bankruptcy Code, each non-debtor party to any Assumed Contract is hereby barred and

permanently enjoined from asserting against Purchaser any default, assignment fee, breach, or

claim or pecuniary loss, or condition to assignment existing, accrued, arising or relating to a

period prior to the Closing Date.  Payment of the Cure Costs shall be deemed to discharge the

Debtor's obligation to:  (i) cure or provide adequate assurance that the Debtor will promptly cure

any defaults; and (ii) compensate, or provide adequate assurance that the Debtor will promptly

compensate, any non-Debtor party to the Assumed Contracts, for any actual pecuniary loss

resulting from any default under the Assumed Contracts.

17.     The failure (if any) of the Debtor or Purchaser, as the case may be, to enforce at

any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such

(Page 18)
Debtor:                     ENOR CORPORATION
Case No.                    15-32714 (VFP)
Caption of Order:           ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                            SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                            CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                            ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                            LEASES; AND (III) GRANTING OTHER RELATED RELIEF

---

terms or conditions, or of any of the rights of the Debtor or Purchaser, as the case may be, to

enforce each and every term and condition of the Assumed Contracts.

18.    Notwithstanding Bankruptcy Rules 6004 and 6006, or any other law that would

serve to stay or limit the immediate effect of this Order, the stays provided for in Bankruptcy

Rules 6004(h) and 6006(d) are hereby waived and this Order shall be effective immediately upon

its entry.

19.    The terms of this Order shall be binding on the Purchaser and its successors, the

Debtor, creditors of the Debtor (whether known or unknown) and all other parties in interest in

the bankruptcy case, and any successors of the Debtor, including any trustee, examiner or other

fiduciary hereafter appointed as a legal representative of the Debtor under Chapter 7 or Chapter

11 of the Bankruptcy Code.

20.    Entry into the APA is undertaken by the parties thereto in good faith and

Purchaser shall be protected by section 363(m) of the Bankruptcy Code in the event that this

Order is reversed or modified on appeal.  The reversal or modification on appeal of the

authorization provided herein to enter into the APA and consummate the transactions

contemplated thereby shall not affect the validity of such transactions, unless such authorization

is duly stayed pending appeal.

(Page 19)
Debtor:              ENOR CORPORATION
Case No.             15-32714 (VFP)
Caption of Order:    ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
                     SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS,
                     CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND
                     ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED
                     LEASES; AND (III) GRANTING OTHER RELATED RELIEF

21.     The consideration provided by the Purchaser for the Purchased Assets under the
APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy
Code.

22.     With respect to the transactions consummated pursuant to this Order, this Order
shall be sole and sufficient evidence of the transfer of title of the Purchased Assets to the
Purchaser, and the Sale transaction consummated pursuant to this Order shall be binding upon
and shall govern the acts of all persons and entities who may be required by operation of law, the
duties of their office, or contract, to accept, file, register or otherwise record or release any
documents or instruments, or who may be required to report or insure any title or state of title in
or to any of the Purchased Assets sold pursuant to this Order, including without limitation, all
filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of
deeds, administrative agencies, governmental departments, secretaries of state, and federal, state,
and local officials, and each of such persons and entities is hereby directed to accept this Order
as sole and sufficient evidence of such transfer of title of the Purchased Assets to the Purchaser
and shall rely upon this Order in consummating the transactions contemplated hereby.

23.     Nothing contained in any plan confirmed in the Debtor's Chapter 11 case or any
order of this Court confirming such plan or in any other order in the Chapter 11 case (including
any order entered after any conversion of this case to a case under Chapter 7 of the Bankruptcy

(Page 20)

| | |
|---|---|
| Debtor: | ENOR CORPORATION |
| Case No. | 15-32714 (VFP) |
| Caption of Order: | ORDER: (I) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF THE DEBTOR'S TOY BUSINESS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (II) AUTHORIZING ASSUMPTION AND ASSIGNMENT OF CERTAIN RELATED EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (III) GRANTING OTHER RELATED RELIEF |

---

Code) shall alter, conflict with, or derogate from, the provisions of the APA or the terms of this Order.

24.     Purchaser is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, and /or any issues related to or otherwise connected to the Sale and the APA.

25.     This Court retains jurisdiction to interpret, implement and enforce the provisions of, and resolve any disputes arising under or related to, this Order and the APA, all exhibits, schedules and amendments thereto, any waivers and consents thereunder and each of the agreements executed in connection therewith.

26.     Nothing in this Order shall modify or waive any closing conditions or termination rights in the APA, and all such conditions and rights shall remain in full force and effect in accordance with their terms.

27.     The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtor's estate.

f:\client_files\a-m\enor corporation\sale pleadings\enor _ imperial sale order.docx

# EXHIBIT A

**EXHIBIT 1**

**Assignment Schedule**

| Contract Party and Address | Equipment | Cure Amount |
|---|---|---|
| M2 Lease Funds<br>175 North Patrick Boulevard<br>Brookfield, WI 53045 | 1995 350 Ton Goldstar Injection Molding Machine<br>Model:  IDE350EN<br>SN: N95350E4347 | NONE |
| M2 Lease Funds<br>175 North Patrick Boulevard<br>Brookfield, WI 53045 | Portable Chiller CFD-10A, Digital Scroll Unit, 460/3/60 | NONE |
| M2 Lease Funds<br>175 North Patrick Boulevard<br>Brookfield, WI 53045 | 4XVL-2 Vacuum Loaders, Portable Chiller, CFD-15A-FC, Digital Scroll Unit, 460/3/60 | NONE |

**EXHIBIT B**

## ASSET PURCHASE AGREEMENT

This ASSET PURCHASE AGREEMENT (this "Agreement") is entered into effective as of July 8, 2016 (the "Effective Date"), by and between ENOR CORPORATION, a New Jersey corporation (the "Company"), and IMPERIAL TOY LLC, a California limited liability company (the "Purchaser"). Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in Section 1.1.

WITNESSETH:

WHEREAS, the Company is engaged in the businesses of: (a) designing, manufacturing, importing, warehousing, marketing, distributing and selling toys and games (the "Toy Business"), and (b) manufacturing, fabricating and supplying protective packaging for coins, stamps, books and other multi-media and collectible items, including, but not limited to, assembling and packaging these respective items (the "MBI Stamp and Coin Business");

WHEREAS, on December 2, 2015, the Company filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"), Case No. 15-32714-VFP (the "Bankruptcy Case");

WHEREAS, upon the terms and subject to the conditions set forth herein and as authorized under Sections 105, 363, and 365 of the Bankruptcy Code, the Company and Purchaser wish to enter into this Agreement, pursuant to which the Company agrees to sell to Purchaser, and Purchaser agrees to buy from the Company, the Purchased Assets in exchange for the payment to the Company of the Purchase Price; and

WHEREAS, the transactions contemplated by this Agreement (the "Transactions") will be subject to the approval of the Bankruptcy Court and will be consummated only pursuant to a Sale Order to be entered in the Bankruptcy Case and other applicable provisions of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants and agreements hereinafter contained, and intending to be bound hereby, the Parties hereby agree as follows:

1.    DEFINITIONS.

1.1    Certain Definitions. For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1 or in other Sections of this Agreement:

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person. For purposes of this definition, the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly,

of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract, or otherwise.

"Ancillary Materials" means all supplies, sales literature, promotional literature, artwork, display units and purchasing records relating to the Toy Business.

"Avoidance Actions" means any and all claims for relief of the Company under chapter 5 of the Bankruptcy Code.

"Books and Records" means (a) all records and lists relating to the Purchased Assets, (b) all records and lists relating to the customers and suppliers of the Toy Business, (c) all product, business and marketing materials relating to the Toy Business, and (d) all books, ledgers, files, reports, plans, drawings and operating records of every kind maintained by the Company relating to the Toy Business.

"Business Day" means any day of the year on which national banking institutions in New York are open to the public for conducting business and are not required or authorized by Law to close.

"Cash Deposit" means a deposit in the amount of Seventy Five Thousand Dollars ($75,000) submitted by Purchaser to the Company's counsel in trust, which shall be held in trust by the Company's counsel in a non-interest bearing account and shall not be released or delivered to any Person except as expressly provided for in Section 4.5 or Section 11.2(c) of this Agreement.

"Claim" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

"Closing" has the meaning set forth in Section 4.1.

"Closing Date" has the meaning set forth in Section 4.1.

"Confidential Information" means and includes information of the Company and compilations of information by the Company relating to the Toy Business including, but not limited to, information regarding any trade secrets, proprietary knowledge, operating procedures, licensing, relationships with customers, suppliers, products, and price and price lists.

"Contract" means any written or oral agreement, arrangement, understanding, license, sublicense, lease, or instrument or other contractual or similar arrangement or commitment to which Company is a party.

"Contract Rights" means all of Company's rights under Contracts relating to the Purchased Assets.

"Credit Deposit" means a deposit in the amount of Twenty Five Thousand Dollars ($25,000) which was previously paid by Purchaser to the Company, receipt of which is acknowledged by the Company, which shall be held by the Company and shall not be released or

delivered to any Person except as expressly provided for in Section 4.5 or Section 11.2(c) of this Agreement.

"Deposit" means a deposit in the amount of One Hundred Thousand Dollars ($100,000) consisting of the Cash Deposit and the Credit Deposit.

"Encumbrance" means any Lien, security interest, mortgage, deed of trust, option, lease, tenancy, occupancy, covenant, condition, easement, agreement, royalty, pledge, hypothecation, charge, claim, option, right of first refusal, servitude, proxy voting trust or agreement, adverse claim, transfer restriction under any agreement of any kind or nature, known or unknown, or other encumbrance.

"Equipment" means all equipment, tooling, molds, machinery, machine tools, motors, fixtures, tools, parts, spare parts, wherever located, including all attachments, accessories, accessions, replacements, substitutions additions, and improvements thereto and all manuals, blueprints, know how, warranties and records in connection therewith and all rights against suppliers, warrantors, manufacturers, and sellers or others in connection therewith.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Excluded Assets" has the meaning set forth in Section 2.2.

"Expiration Date" means the date that is ninety (90) days after the Closing Date.

"Governmental Body" means any governmental unit (as that term is defined in section 101(27) of the Bankruptcy Code), government, or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality, or authority thereof, or any court or arbitrator (public or private).

"Holdback Amount" means an amount equal to twenty percent (20%) of the Purchase Price (i.e., $192,400) consisting of the amount of the Cash Deposit plus the amount of the Reserve.

"Interest" means an "interest in property" as such phrase is used in Section 363(e) of the Bankruptcy Code.

"Intentional Misrepresentation" means a knowing, intentional, reckless or grossly negligent misrepresentation or breach of representation, warranty, covenant or agreement.

"Inventory" means all raw materials, component parts, work in process, finished goods and other inventory, goods in the possession of outside processors or other third parties, and all components, supplies, packaging and other materials of any kind, nature or description which are or might be used in connection with the manufacture, packing, shipping, advertising, selling or finishing of any such goods, all documents of title or documents representing the same and all records, files and writings with respect thereto.

"IRC" means the Internal Revenue Code of 1986, as amended.

"Law" means any federal, state, local, or foreign law, statute, code, ordinance, rule, regulation, or common-law requirement.

"Legal Proceeding" means any judicial, administrative, or arbitral actions, suits, or proceedings (public or private) or any proceedings by or before a Governmental Body.

"Liability" means any debt, liability, or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or not accrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" has the meaning ascribed thereto in Section 101(37) of the Bankruptcy Code.

"Material Adverse Effect" means any fact, condition, change, violation, inaccuracy, circumstance, effect or event, individually or in the aggregate, that has, or would be reasonably expected to have, a material adverse effect on the property, business, operations, assets (tangible and intangible), or condition (financial or otherwise) of the Toy Business or the Purchased Assets or the ability of the Company to perform any of its material obligations under this Agreement.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment, or arbitration award of a Governmental Body.

"Party" means Purchaser or the Company.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body, or other entity.

"Proprietary Rights" means all patents, patent licenses, know-how, know-how licenses, trade secrets, trade names, brand names, trademarks, logos, slogans, service marks, URLs, internet domain names, designs, copyrights, Confidential Information, technology and all other intangible property rights, whether registered or unregistered, all common law rights relating to the foregoing, and any applications or registrations therefor and all renewals thereof, all variations of any of the foregoing and all goodwill directly or indirectly associated with any of the foregoing, together with all claims for damages by reason of past infringements of any of the foregoing along with the right to sue for and collect such damages.

"Purchase Price" has the meaning set forth in Section 3.1.

"Purchased Assets" has the meaning set forth in Section 2.1(b).

"Reserve" means the sum of One Hundred Seventeen Thousand and Four Hundred Dollars ($117,400) of the Purchase Price to be paid by Purchaser to the Company's counsel in trust at Closing, which shall be held in trust by the Company's counsel in a non-interest bearing

account and shall not be released or delivered to any Person except as expressly provided for Section 11.2(c) of this Agreement.

"Sale Order" means an Order entered by the Bankruptcy Court approving this Agreement, which shall be acceptable to the Purchaser.

"Stockholders" means Steven C. Udwin and David Tarica.

"Tax Authority" means any government, or agency, instrumentality, or employee thereof, charged with the administration of any Law relating to Taxes.

"Taxes" means (i) all federal, state, local, or foreign taxes, charges, or other assessments, including all net income, gross receipts, capital, sales, use, ad valorem, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property, and estimated taxes; (ii) any item described in clause (i) for which a taxpayer is liable as a transferee or successor, by reason of the regulations under Section 1502 of the IRC, or by contract, indemnity, or otherwise; and (iii) all interest, penalties, fines, additions to tax, or additional amounts imposed by any Tax Authority in connection with any item described in clause (i) or (ii).

"Tax Return" means any return, report or similar statement required to be filed with respect to any Taxes (including any attached schedules), including any information return, claim for refund, amended return or declaration of estimated Tax.

"Termination Date" has the meaning set forth in Section 4.4(a).

"Threshold Amount" means Ten Thousand Dollars ($10,000).

"Warranties" means all rights under or pursuant to all warranties, representations and guarantees with respect to the Purchased Assets and/or made by suppliers in connection with products or services relating to the Toy Business.

1.2    Other Definitional and Interpretive Matters. Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Calculation of Time Period. When calculating the period of time before which, within which, or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded. If the last day of such period is not a Business Day, then the period in question shall end on the next succeeding Business Day.

Exhibits and Schedules. All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein. Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

<u>Gender and Number</u>.  Any reference in this Agreement to any gender or genders shall include all genders.  Words imparting only the singular number shall include the plural and vice versa.

<u>Headings</u>.  The division of this Agreement into Sections, and other subdivisions, and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement.  All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

<u>Herein</u>.  Words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless so stated.

<u>Including</u>.  The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it unless so stated.

<u>Construction</u>.  The Parties have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any provision of this Agreement.

2.    PURCHASE AND SALE OF ASSETS.

2.1    <u>Purchase and Sale of Assets</u>.

(a)    On the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser shall purchase, acquire, and accept from the Company, and the Company shall sell, transfer, convey, and deliver to Purchaser, all of the Company's right, title and interest in, to, and under the Purchased Assets, free and clear of all Liens, Claims, Interests, and Encumbrances.

(b)    For purposes of this Agreement, the term "Purchased Assets" means all of the following properties, assets, and rights of the Company:

(i)    all Equipment including without limitation the Equipment listed on Schedule 2.1(b)(i)A and the molds listed on Schedule 2.1(b)(i)B;

(ii)    all Inventory including without limitation the Inventory listed on Schedule 2.1(b)(ii)A and the Golf Caddy component Inventory listed on Schedule 2.1(b)(ii)B;

(iii)    all Proprietary Rights including without limitation the Proprietary Rights listed on Schedule 2.1(b)(iii);

-6-

(iv)    all Contract Rights;

(v)    all Contracts listed on Schedule 2.1(b)(v) which are actually assigned to and assumed by Purchaser in writing at the Closing and all Contract Rights with respect thereto (collectively, the "Assumed Contracts");

(vi)    all Books and Records;

(vii)    all Ancillary Materials;

(viii)    all Warranties;

(ix)    all Avoidance Actions against, involving or relating to (i) the Purchaser, and/or (ii) the customers and/or suppliers of the Toy Business and/or any of their respective Affiliates listed on Schedule 2.1(b)(ix);

(x)    all deposits or prepaid charges and prepaid expenses paid relating to any of the foregoing; and

(xi)    all goodwill directly or indirectly associated with any of the foregoing.

2.2    Excluded Assets.  Notwithstanding anything to the contrary contained herein, nothing herein shall be deemed to sell, transfer, assign, or convey the Excluded Assets to Purchaser, and the Company shall retain all right, title, and interest to, in, and under, and all obligations with respect to, the Excluded Assets.  For all purposes of and under this Agreement, the term "Excluded Assets" means collectively: (a) all cash, cash equivalents and accounts and notes receivable of the Company, (b) the Inventory of the Company listed on Schedule 2.2(b), (c) the Equipment of the Company listed on Schedule 2.2(c), (d) the assets of the Company used solely and exclusively in the Company's MBI Stamp and Coin Business and listed on Schedule 2.2(d), (e) the other assets of the Company listed on Schedule 2.2(e), (f) all minute books, stock ledgers, corporate seals and stock certificates of the Company, (g) all Contracts not actually assigned to and assumed by Purchaser in writing at the Closing and all Contract Rights with respect thereto, (h) all receivables, rights, claims, refunds, causes of action, chooses in action, rights of recovery and rights of setoff related primarily to any Excluded Asset or any Excluded Liability, (i) all insurance policies, including but not limited to rights under director and officer liability policies, ERISA and trustee liability policies and employment practices liability policies, and all rights under insurance policies (including but not limited to all rights to proceeds under insurance policies) relating to claims for losses related primarily to any Excluded Asset or Excluded Liability to the extent applicable, (j) all books and records (A) to the extent related primarily to any Excluded Asset or any Excluded Liability, (B) to the extent relating to employees of the Company, or (C) other books and records that the Company is required by applicable law to retain or that the Company reasonably determines are necessary to retain including Tax Returns, financial statements, and corporate or other entity filings (provided, however, that the Company shall provide to Purchaser from time to time upon request and at no cost or expense to Purchaser copies of any portions of such retained books and records that relate to the Toy Business, the Purchased Assets or the Assumed Liabilities), (k) all deposits or prepaid charges and prepaid

-7-

expenses paid relating primarily to any Excluded Assets or any Excluded Liability, (l) all Avoidance Actions not referenced in Section 2.1 above, and (m) any rights or claims of the Company under this Agreement.

2.3    Assumed Liabilities. Upon the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Purchaser shall execute and deliver to the Company an assignment and assumption agreement in the form attached hereto as Exhibit A (the "Assignment and Assumption Agreement") pursuant to which Purchaser shall, subject to the provisions of Section 2.4, assume and agree to discharge, when due (in accordance with its respective terms and subject to the respective conditions thereof), only the following Liabilities (without duplication) (collectively the "Assumed Liabilities") and no others:

2.3.1    All Liabilities of the Company arising at and after the Closing under the Assumed Contracts (other than Liabilities arising as a result of the Company's breach thereof prior to the Closing).

2.4    Payment of Cure Amount. The Purchase Price includes consideration for the proposed cure amount of unexpired equipment leases included in the Assumed Contracts (the "Cure Amount"), which Cure Amount shall be the total amount payable by the Company in order to cure any monetary defaults required to be cured under section 365(b)(1) of the Bankruptcy Code or otherwise to effectuate, pursuant to the Bankruptcy Code, the assumption by Purchaser and assignment to Purchaser of all Assumed Contracts being assigned hereunder, and which shall be subject to approval by the Bankruptcy Court.

2.5    No Other Assumption of Liabilities. Notwithstanding any other provision of this Agreement, other than the Assumed Liabilities, Purchaser is not assuming, shall not assume and shall be deemed not to have assumed any obligations or Liabilities of the Company of whatever nature whatsoever, whether presently in existence or arising hereafter, known or unknown, disputed or undisputed, contingent or non-contingent, liquidated or unliquidated, or otherwise (all such obligations and Liabilities not being assumed, collectively, the "Excluded Liabilities").

2.6    Conveyances. The Company shall deliver possession and control of all of the Purchased Assets to Purchaser at the Closing. The Company shall use reasonable efforts to safeguard the Purchased Assets and cooperate and assist Purchaser reasonably in the removal and relocation of the Purchased Assets from the Company's facilities promptly following the Closing (but no later than ten (10) Business Days after the Closing Date). For clarification, Purchaser shall not be liable for any rent, fees, costs, expenses or other charges arising out of or related to the presence of the Purchased Assets at the Company's facilities; provided that Purchaser shall be responsible for all out-of-pocket costs of shipping or transportation of such Purchased Assets. From time to time following the Closing, the Company shall at its sole cost and expense take and any and all actions (including, without limitation, executing and delivering any and all documents and instruments with notarized signatures and in recordable form if requested) reasonably requested by Purchaser to transfer and deliver to, and vest good and marketable title in, Purchaser any and all of the Purchased Assets.

2.7    Allocation of Purchase Price. Within forty five (45) days after the Holdback Amount is fully disbursed pursuant to Section 11.2(c), Purchaser shall deliver to the Company schedule(s) (the "Allocation Schedule(s)") allocating the Purchase Price (including any Assumed Liabilities that are liabilities for Federal Income Tax purposes) among the Purchased Assets. The Allocation Schedule(s) shall be prepared in accordance with Section 1060 of the Code and the regulations thereunder. Purchaser and the Company will each file IRS Form 8594, and all Tax Returns, in accordance with the Allocation Schedule(s) that delivered by Purchaser pursuant to this Section 2.7. Purchaser, on the one hand, and the Company, on the other hand, each agrees to provide the other promptly with any other information required to complete Form 8594.

3.    CONSIDERATION.

3.1    Purchase Price. The aggregate consideration for the Purchased Assets and all obligations of the Company under this Agreement shall be the sum of Nine Hundred and Sixty Two Thousand Dollars ($962,000) (the "Purchase Price"). Under no circumstances shall any portion of the Holdback Amount be considered to be property of the Company's bankruptcy estate under section 541 of the Bankruptcy Code unless and until properly disbursed to the Company in accordance with Section 11.2(c) of this Agreement.

4.    CLOSING.

4.1    Closing Date. The closing of the purchase and sale of the Purchased Assets provided for in Section II hereof (the "Closing") shall take place at the offices of Gibbons P.C., One Gateway Center, Newark, New Jersey 07102 (or at such other place as the Parties may agree in writing) at 10:00 a.m. (Prevailing Eastern Time) on the first Business Day on which all of the conditions set forth in Section 9 have been satisfied or waived (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), unless another time or date, or both, are agreed to in writing by the Parties. The date on which the Closing shall be held is referred to in this Agreement as the "Closing Date." The Closing shall occur at or before Noon (Prevailing Eastern Time) on the Termination Date.

4.2    Deliveries by the Company. At the Closing, the Company shall deliver to Purchaser the following:

(a)    one or more duly executed bills of sale in the form of Exhibit B hereto;

(b)    one or more duly executed trademark, patent and other intellectual property assignments in the form of Exhibit C hereto;

(c)    a Restrictive Covenant Agreement in the form of Exhibit D hereto duly executed by each of the Stockholders;

(d)    the Assignment and Assumption Agreement;

(e)    the certificate required to be delivered pursuant to Section 9.1(a) and Section 9.1(b);

(f)    a certified copy of the Sale Order as entered by the Bankruptcy Court; and

(g)    such other documents, instruments, and certificates as Purchaser may reasonably request.

4.3    <u>Deliveries by Purchaser</u>. At the Closing:

(a)    the Credit Deposit shall be deemed to be credited against Twenty Five Thousand Dollars ($25,000) of the Purchase Price and disbursed by the Company to the Persons and accounts set forth on Schedule 4.3(a); and

Purchaser shall deliver:

(b)    Seven Hundred Forty Four Thousand and Six Hundred Dollars ($744,600) of the Purchase Price by wire transfer of immediately available funds to the Persons and accounts set forth on Schedule 4.3(b). The balance of the Purchase Price, consisting of the Holdback Amount (i.e., $192,400), shall be held by the Company's counsel in trust and shall not be released or delivered to any Person except as expressly provided for in Section 11.2(c) of this Agreement.

(c)    the Assignment and Assumption Agreement; and

(d)    the certificate required to be delivered pursuant to Section 9.2(a) and Section 9.2(b).

4.4    <u>Termination of Agreement</u>. This Agreement may be terminated prior to the Closing as follows:

(a)    by Purchaser or the Company, if the Closing shall not have occurred by Noon (Prevailing Eastern Time) on August 31, 2016 (the "Termination Date"); <u>provided</u>, <u>however</u>, that if the Closing shall not have occurred on or before the Termination Date due to a material breach of any representations, warranties, covenants, or agreements contained in this Agreement by Purchaser or the Company, then the breaching Party may not terminate this Agreement pursuant to this Section 4.4(a);

(b)    by mutual written consent of the Company and Purchaser;

(c)    by Purchaser pursuant to Section 8.4(c);

(d)    by Purchaser, if any condition to the obligations of Purchaser set forth in Section 9.1 or Section 9.3 shall have become incapable of fulfillment other than as a result of a material breach by Purchaser of any covenant or agreement contained in this Agreement, and if such condition is not waived in writing by Purchaser;

(e)    by the Company, if any condition to the obligations of the Company set forth in Section 9.2 or Section 9.3 shall have become incapable of fulfillment other than as a result of a

material breach by the Company of any covenant or agreement contained in this Agreement, and if such condition is not waived in writing by the Company;

(f)    by Purchaser, if there shall be a material breach by the Company of any representation or warranty, or any covenant or agreement contained in this Agreement that would result in a failure of a condition set forth in Section 9.1 or Section 9.3 and which breach has not been cured by the earlier of (i) ten (10) Business Days after the giving of written notice by Purchaser to the Company of such breach, and (ii) the Termination Date;

(g)    by the Company, if there shall be a material breach by Purchaser of any representation or warranty, or any covenant or agreement contained in this Agreement that would result in a failure of a condition set forth in Section 9.2 or Section 9.3 and which breach has not been cured by the earlier of (i) ten (10) Business Days after the giving of written notice by the Company to Purchaser of such breach, and (ii) the Termination Date; and

(h)    by Purchaser or the Company, if there shall be in effect a final and non-appealable Order of a Governmental Body of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Transactions.

4.5    Effect of Termination.  In the event that this Agreement is validly terminated as provided herein, then each of the Parties shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and such termination shall be without liability to Purchaser or the Company; provided, however, that nothing in this Section 4.5 or otherwise shall be deemed to release any Party from liability for any breach of its obligations under this Agreement except as otherwise provided herein.  Upon termination of this Agreement for any reason the Deposit shall be returned to Purchaser within two (2) Business Days after such termination, unless the Company has fully and timely complied with all of its obligations under this Agreement and such termination is the result of Purchaser materially breaching this Agreement as determined by a final and non-appealable Order of the Bankruptcy Court in which event the Deposit shall be remitted to the Company as liquidated damages for its sole and exclusive remedy for such material breach and termination.

5.    REPRESENTATIONS AND WARRANTIES OF THE COMPANY.  The Company hereby represents and warrants to Purchaser that as of the Effective Date:

5.1    Organization and Good Standing.  The Company is duly incorporated and organized, validly existing and in good standing under the laws of the State of New Jersey.  The Company is qualified to do business and is in good standing under the Laws of the jurisdictions in which the ownership or use of the properties owned or used by it and the nature of the activities conducted by it, requires such qualification, except where failure to so qualify or be in good standing would not reasonably be expected to have a Material Adverse Effect.  Subject to the limitations imposed on the Company as a result of having filed a petition for relief under the Bankruptcy Code, the Company has the requisite corporate power and authority to own, lease, and operate its properties and to carry on it business as now conducted by the Company.

5.2    Authorization of Agreement.  Subject to entry of the Sale Order with respect to the Company: (i) the Company has the requisite corporate power and authority to execute and deliver this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder, and (ii) the execution and delivery of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and the consummation of the Transactions have been duly authorized by all requisite corporate action on the part of the Company.  This Agreement has been duly executed and delivered by the Company and, upon entry of the Sale Order with respect to the Company, this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party constitutes the legal, valid, and binding obligation of the Company enforceable against the Company in accordance with its terms.

5.3    Conflicts; Consents of Third Parties.

(a)    Subject to entry of the Sale Order with respect to the Company, the execution and delivery by the Company of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party, the consummation of the Transactions, and compliance by the Company with any of the provisions hereof and thereof, do not and will not conflict with, result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) the Certificate of Incorporation, by-laws (or similar governing document) of the Company; (ii) any of the Assumed Contracts, (iii) any other Contract to which the Company is a party or by which any of the properties or assets of the Company are bound; (iv) any Order of any Governmental Body applicable to the Company or any of its properties or assets; or (v) any applicable Law, except in the case of clauses (iii), (iv) and (v) as would not reasonably be expected to have a Material Adverse Effect.

(b)    Except for the entry of the Sale Order with respect to the Company, no consent, waiver, approval, Order, permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of the Company in connection with the execution and delivery of this Agreement or any other agreement, document, or instrument contemplated hereby, the compliance by the Company with any of the provisions hereof or thereof, the consummation of the Transactions, the assignment, conveyance or delivery of the Purchased Assets, or the taking by the Company of any other action contemplated hereby or thereby.

5.4    Title to and Condition of Purchased Assets.

(a)    The Company owns good and marketable title to all of the Purchased Assets and, subject to the entry of the Sale Order, has the right to transfer the Purchased Assets to Purchaser. Subject to the entry of the Sale Order, Purchaser will be vested with good and marketable title to all of the Purchased Assets at the Closing, free and clear of all Liens, Claims, Interests, and Encumbrances.

(b)    Except as set forth on Schedule 5.4(b), all of the Equipment is in good operating condition and repair (ordinary wear and tear excepted), free from any defects, is usable for the

purposes intended in the ordinary course of business, and conforms to all applicable Laws including without limitation all Laws relating to its construction, use and operation. All payments have been fully and timely made (and will continue to be fully and timely made through the Closing Date) by the Company in accordance with the terms of the Assumed Contracts and there are no breaches of or defaults under the Assumed Contracts.

(c)    Except as set forth on Schedule 5.4(c), all of the Inventory is newly manufactured, good and useable, and saleable in the ordinary course of business. Except as set forth on Schedule 5.4(c), none of the Inventory: (i) consists of "seconds" or goods returned or rejected by a customer, or (ii) is obsolete, defective, damaged, slow moving or unmerchantable, or (iii) consists of samples or inventory which is used for promotional and other sales activities, or (iv) does not conform to all requirements of law pertaining to its manufacture, including the Fair Labor Standards Act, or (v) is subject to any licensing or other contractual arrangement limiting its sale. Except as set forth on Schedule 5.4(c), all Inventory conforms to and meets or exceeds all standards required by all applicable Laws and, to the Company's knowledge, there is no pending legislation, ordinance or regulation which if adopted or enacted would have a material adverse effect on such Inventory. Except as set forth on Schedule 5.4(c), the Company has not issued any warranties or customer service policies concerning any of its merchandise or products beyond its standard warranty and service terms and conditions which are set forth on Schedule 5.4(c). Except as set forth on Schedule 5.4(c), no claims of customers or others based on an alleged or admitted defect of material, workmanship or design or otherwise in or in respect of any merchandise or products sold by the Company is presently pending or, to the Company's knowledge, threatened. There is no pending or, to the Company's knowledge, threatened any (i) recall or investigation of, or with respect to, any product manufactured, distributed or sold by, or on behalf of the Company or (ii) claim against the Company deriving from the provisions of applicable Law governing (x) manufacturers' and distributors' Liabilities for the safety of such products, or (y) manufacturers' Liabilities alleging the defectiveness of such products.

(d)    Except as set forth on Schedule 5.4(d), the Company owns and has the exclusive right to use, without payment of any license fee, royalty or similar charge, and without infringement or violation of rights of others, all of the Proprietary Rights. There are no Proprietary Rights which are used under license from others or in which the Company has granted any rights to others. Except as set forth on Schedule 5.4(d), there are no proceedings pending or, to the Company's knowledge, threatened, alleging any infringement or violation by the Company of any Proprietary Rights of third parties or which challenge the exclusive rights of the Company in respect of any Proprietary Rights. No Proprietary Rights are subject to any outstanding order, ruling, decree, judgment or stipulation by or with any court, arbitrator or administrative agency, and none of the Proprietary Rights are being infringed by others or used by others (whether or not such use constitutes infringement).

5.5    Compliance with Law. The Company has complied in all material respects with all Laws applicable to the Toy Business and/or the Purchased Assets, and no claims or complaints have been received by the Company that the Company is in violation of any Laws.

5.6    Brokers. The Company has no obligation (and has not taken any action that will result in any obligation of Purchaser) to pay any fees, commissions, or other similar compensation to any

broker, finder, investment banker, financial advisor, or other similar Person in connection with the Transactions.

5.7    Good Faith Purchaser. This Agreement was negotiated and entered into at arms' length and in good faith, and the Parties did not engage in any collusion with respect to setting or fixing the Purchase Price. There are no facts to support a finding that Purchaser negotiated and entered into this Agreement and any ancillary agreements to which Purchaser is a party, other than in good faith, as that term is used in Bankruptcy Code Section 363(m).

5.8    No Adverse Effect. To the Company's knowledge, there is no fact relating to the Company, the Toy Business or the Transactions which adversely affects, or would be reasonably expected to adversely affect, the Purchased Assets.

5.9    No Other Representations. **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES IN SECTION 5 AND IN THE CLOSING CERTIFICATE OF THE COMPANY DELIVERED PURSUANT TO SECTION 9.1 (A) NEITHER THE COMPANY, NOR ANY OF ITS REPRESENTATIVES, AGENTS, DIRECT OR INDIRECT SHAREHOLDERS, OR ANY OF THE RESPECTIVE AFFILIATES OF ANY OF THE FOREGOING, MAKES ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO THE PURCHASED ASSETS, THE ASSUMED LIABILITIES OR THE TOY BUSINESS, OR WITH RESPECT TO ANY OTHER INFORMATION PROVIDED, OR MADE AVAILABLE, TO PURCHASER OR ANY OF ITS REPRESENTATIVES, AGENTS, DIRECT OR INDIRECT SHAREHOLDERS, OR ANY OF THE RESPECTIVE AFFILIATES OF ANY OF THE FOREGOING, IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY, (B) ALL THE PURCHASED ASSETS SHALL BE TRANSFERRED ON AN "AS-IS, WHERE-IS" BASIS, AND (C) THE COMPANY MAKES NO FURTHER REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED (INCLUDING BUT NOT LIMITED TO ANY IMPLIED WARRANTY OR REPRESENTATION AS TO THE VALUE, CONDITION, MERCHANTABILITY OR SUITABILITY AS TO ANY OF THE PURCHASED ASSETS), IN RESPECT OF THE CONDITION OR SUITABILITY OF THE PURCHASED ASSETS, AND ANY SUCH REPRESENTATIONS AND WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED, AND PURCHASER ACKNOWLEDGES THAT IT HAS NOT RELIED THEREON AND HAS ONLY RELIED ON THE REPRESENTATIONS AND WARRANTIES IN SECTION 5 AND IN THE CLOSING CERTIFICATE OF THE COMPANY DELIVERED PURSUANT TO SECTION 9.1.**

6.    REPRESENTATIONS AND WARRANTIES OF PURCHASER. Purchaser hereby represents and warrants to the Company that as of the Effective Date:

6.1    Organization and Good Standing. Purchaser is a limited liability company duly organized, validly existing, and in good standing under the Laws of the state of California and is qualified to do business in each jurisdiction in which the ownership or use of the properties owned or used by it and the nature of the activities conducted by it, requires such qualification, except where failure to so qualify or be in good standing would not reasonably be expected to

have a material adverse effect the ability of Purchaser to perform any of its material obligations under this Agreement. Purchaser has the requisite limited liability company power and authority to own, lease, and operate its properties and to carry on its business as now conducted.

6.2    <u>Authorization of Agreement</u>. Purchaser has the requisite limited liability company power and authority to execute and deliver this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and to perform its obligations hereunder and thereunder. The execution and delivery of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party and the consummation of the Transactions have been duly authorized by all requisite limited liability company action on the part of Purchaser. This Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party has been or will be duly and validly executed and delivered by Purchaser and this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party constitutes or will constitute the legal, valid, and binding obligation of Purchaser enforceable against Purchaser in accordance with its terms.

6.3    <u>Conflicts; Consents of Third Parties</u>.

(a)    The execution and delivery by Purchaser of this Agreement and each other agreement, document, or instrument contemplated hereby to which it is a party, the consummation of the Transactions, and compliance by it with any of the provisions hereof or thereof do not conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) Purchaser's organizational or governing documents; (ii) any contract, agreement, lease, or permit to which Purchaser is a party or by which any of its properties or assets are bound; (iii) any Order of any Governmental Body applicable to Purchaser or any of its properties or assets as of the date hereof; or (iv) any applicable Law, except in the case of clauses (ii), (iii) and (iv) as would not reasonably be expected to have a material adverse effect the ability of Purchaser to perform any of its material obligations under this Agreement.

(b)    Except for the entry of the Sale Order, no consent, waiver, approval, Order, permit, or authorization of, declaration or filing with, or notification to any Person or Governmental Body is required on the part of Purchaser that has not been obtained, made or provided in connection with the execution and delivery of this Agreement and any other agreement, document, or instrument contemplated hereby to which it is a party, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the Transactions, or Purchaser's taking of any other action contemplated hereby or thereby.

6.4    <u>Brokers</u>. Purchaser does not have any obligation (or taken any action that will result in any obligation of the Company) to pay any fees, commissions, or other similar compensation to any broker, finder, investment banker, financial advisor, or other similar Person in connection with the Transactions.

6.5    <u>Purchase Price</u>. The obligations of Purchaser under this Agreement are not contingent on the availability of financing. Purchaser shall have at the Closing sufficient cash, available lines of credit or other sources of immediately available funds to enable it to make payment of the

-15-

Purchase Price to the Company pursuant to this Agreement and to pay any other amounts to be paid by it hereunder, including but not limited to the Assumed Liabilities.

6.6   No Other Representations.  **EXCEPT FOR THE REPRESENTATIONS AND WARRANTIES IN SECTION 6 AND IN THE CLOSING CERTIFICATE OF PURCHASER DELIVERED PURSUANT TO SECTION 9.2, NEITHER PURCHASER, NOR ANY OF ITS REPRESENTATIVES, AGENTS, DIRECT OR INDIRECT OWNERS, OR ANY OF THE RESPECTIVE AFFILIATES OF ANY OF THE FOREGOING, MAKES ANY EXPRESS OR IMPLIED REPRESENTATION OR WARRANTY WITH RESPECT TO OR IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED HEREBY, AND ANY SUCH REPRESENTATIONS AND WARRANTIES ARE HEREBY EXPRESSLY DISCLAIMED, AND THE COMPANY ACKNOWLEDGES THAT IT HAS NOT RELIED THEREON AND HAS ONLY RELIED ON THE REPRESENTATIONS AND WARRANTIES IN SECTION 6 AND IN THE CLOSING CERTIFICATE OF PURCHASER DELIVERED PURSUANT TO SECTION 9.2.**

7.   BANKRUPTCY COURT MATTERS.

7.1   Submission to the Bankruptcy Court of the Sale Order.  The sale of the Purchased Assets is subject to and contingent upon entry of the Sale Order upon proper notice in accordance with the applicable provisions of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for the District of New Jersey.  In the event the entry of the Sale Order is appealed, the Company shall use commercially reasonable efforts to oppose any such appeal.  The Sale Order shall contain language that, among other things, transfers to Purchaser all rights available to Purchaser under Section 363 of the Bankruptcy Code, including a finding that Purchaser is a good-faith purchaser pursuant to Section 363(m) of the Bankruptcy Code; that the sale of the Purchased Assets contemplated hereby did not involve any improper conduct, including collusion, and cannot be avoided under grounds set forth under Section 363(n) of the Bankruptcy Code; that all claims of Liens or Encumbrances including the pre-petition and post-petition claims of any secured creditors of the Company or creditors of the Company whose claims could act as a Lien against the Purchased Assets are transferred to the proceeds of the sale, thereby allowing the Purchased Assets to be sold free and clear of any and all Liens, Claims, Interests and Encumbrances of any nature under Section 363(f) of the Bankruptcy Code. The Sale Order shall also waive the fourteen-day stay of the sale of the Purchased Assets pursuant to Fed. R. Bankr. P. 6004(h) and indicate that the Transactions may be consummated immediately upon entry of the Sale Order.

7.2   Bankruptcy Case Motions.  The Company shall, at its sole cost and expense, prepare, file and prosecute a motion no later than July 8, 2016 seeking entry of the Sale Order by the Bankruptcy Court.  The Company shall use its reasonable best efforts to provide Purchaser with copies of all motions, applications and supporting papers prepared by or on behalf of the Company (including forms of orders and notices to interested parties) directly relating to the Purchased Assets or this Agreement at least two (2) Business Days prior to the filing thereof in the Bankruptcy Case so as to allow Purchaser to provide reasonable comments for incorporation into same.

7.3    Deadline for Entry of the Sale Order. The Company shall use its reasonable best efforts to have the Bankruptcy Court enter the Sale Order no later than August 2, 2016. Furthermore, the Company shall use its reasonable best efforts to obtain any other approvals or consents from the Bankruptcy Court that may be reasonably necessary to consummate the transactions contemplated in this Agreement.

8.    COVENANTS.

8.1    Consents. Each Party shall use its respective reasonable best efforts to obtain at the earliest practicable date all consents and approvals required to consummate the Transactions.

8.2    Cooperation. The Company shall allow Purchaser, through Purchaser's employees, agents and representatives, to make such investigation of the Toy Business and the Purchased Assets, including, without limitation, the properties, plants, books, records, key employees, financial statements, internal financial reports, projections and other materials relating to the Toy Business, and to conduct such examination of the condition (financial or otherwise) of the Company and the Toy Business as Purchaser deems reasonably necessary or advisable. The Company will reasonably cooperate with Purchaser, as requested by Purchaser, in the planning in advance for the future operations of the business of Purchaser. Any such investigation shall be conducted during regular business hours and upon reasonable notice and in a manner so as not to interfere with the operations of the Toy Business.

8.3    Notification of Certain Matters. The Company shall give prompt written notice to Purchaser of (a) the occurrence, or failure to occur, of any event which occurrence or failure would be likely to cause any representation or warranty contained in this Agreement or in any exhibit or schedule hereto to be untrue or inaccurate in any respect, (b) any failure of the Company to comply with or satisfy any covenant, condition or agreement to be complied with or satisfied by it under this Agreement or any exhibit or schedule hereto, and (c) any adverse developments in the business of the Company including without limitation any litigation or other material events; provided, however, that any such disclosure shall not be deemed to cure any breach of a representation, warranty, covenant or agreement or to satisfy any condition herein.

8.4    Risk of Loss. From the Effective Date through the Closing Date, all risk of loss or damage to the Purchased Assets shall be borne by the Company. If any portion of the Purchased Assets is destroyed or damaged by fire, casualty or any other cause on or prior to the Closing Date, the Company shall give written notice to Purchaser as soon as practicable after (but in no event later than two calendar days after) such damage or destruction, a detailed description of such damage or destruction and the amount of insurance, if any, covering such Purchased Assets and the amount, if any, which the Company is otherwise entitled to receive as a consequence. Purchaser shall have the option of (a) accepting such Purchased Assets in their destroyed or damaged condition, in which event Purchaser shall be entitled to the proceeds of any insurance or other proceeds payable with respect to such loss and the Purchase Price shall be reduced by an appropriate amount for any uninsured or under insured portion of the loss as reasonably determined in good faith by Purchaser, (b) excluding such Purchased Assets from this Agreement, in which event the Purchase Price shall be reduced by an appropriate amount allocated to such Purchased Assets as reasonably determined in good faith by Purchaser, or (c) if

such destruction or damage involves more than Ten Thousand Dollars ($10,000), terminating this Agreement without further obligation of or liability to Purchaser. If Purchaser accepts such Purchased Assets, then all insurance and other proceeds shall belong, and shall be assigned to, Purchaser.

8.5     Further Assurances. Each Party shall use its respective reasonable best efforts to (a) take all actions necessary or appropriate to consummate the Transactions, and (b) cause the fulfillment at the earliest practicable date of all of the conditions to the other Party's obligations to consummate the Transactions. Without limiting the generality of the foregoing, the Company shall fully and timely make all payments as and when due and payable through the Closing Date in accordance with the terms of the Assumed Contracts.

8.6     Publicity. The Company shall not issue any press release concerning this Agreement or the Transactions without obtaining the prior written approval of Purchaser.

8.7     Copy of Books and Records. Solely for purposes of facilitating the Company's efforts to (i) administer and close the Bankruptcy Case, and (ii) prepare Tax Returns, the Company may make and retain a copy of Books and Records included in the Purchased Assets.

9.      CONDITIONS TO CLOSING.

9.1     Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the Transactions is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

        (a)     the representations and warranties of the Company contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date as if made anew at and as of the Closing Date, and the Company shall deliver to Purchaser a signed certificate, dated the Closing Date, certifying that the condition set forth in this paragraph (a) has been satisfied;

        (b)     the Company shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it on or prior to the Closing Date, and the Company shall deliver to Purchaser a signed certificate, dated the Closing Date, certifying that the condition set forth in this paragraph (b) has been satisfied;

        (c)     Purchaser shall have verified the existence, quantity and condition of the Purchased Assets to its satisfaction as of the Closing; provided, however, that any such verification shall not be deemed to cure any breach of a representation, warranty, covenant or agreement of the Company herein;

        (d)     There shall not have occurred any material adverse change in the Toy Business or the Purchased Assets from the Effective Date to the Closing Date;

(e)    All consents, authorizations, orders, approvals and waivers from Governmental Bodies and other third parties necessary for the consummation of the Transactions shall have been obtained;

(f)    No action or proceeding shall have been instituted to restrain or prohibit the Transactions or to obtain damages or other relief in connection with the execution of this Agreement or the consummation of the Transactions; and no notice shall have been given to any Party hereto to the effect that consummation of the Transactions would constitute a violation of any Law or that any Person intends to commence proceedings to restrain consummation of the transactions contemplated hereby;

(g)    The Company shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2.

9.2    Conditions Precedent to Obligations of the Company. The obligations of the Company to consummate the Transactions are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by the Company in whole or in part to the extent permitted by applicable Law):

(a)    the representations and warranties of Purchaser contained in this Agreement shall be true and correct in all material respects on and as of the Closing Date as if made anew at and as of the Closing Date, and Purchaser shall deliver to the Company a signed certificate, dated the Closing Date, certifying that the condition set forth in this paragraph (a) has been satisfied;

(b)    Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by it on or prior to the Closing Date, and Purchaser shall deliver to the Company a signed certificate, dated the Closing Date, certifying that the condition set forth in this paragraph (b) has been satisfied; and

(c)    Purchaser shall have delivered, or caused to be delivered, to the Company all of the items set forth in Section 4.3.

9.3    Conditions Precedent to Obligations of Purchaser and the Company. The respective obligations of Purchaser and the Company to consummate the Transactions are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and the Company in whole or in part to the extent permitted by applicable Law):

(a)    there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining, or otherwise prohibiting the consummation of the Transactions; and

(b)    the Sale Order shall have been entered and shall remain in full force and effect and shall not have been stayed, vacated, modified, or supplemented in any material respect without the prior written consent of Purchaser and the Company.

9.4    Frustration of Closing Conditions. No Party may rely on the failure of any condition set forth in Section 9.1, 9.2, or 9.3, as the case may be, if such failure was caused by such Party's failure to comply in all material respects with any provision of this Agreement.

10.    TAXES.

10.1    Transfer Taxes. The Company shall be liable for and timely pay any and all Taxes arising out of or related to the Purchased Assets, the purchase, sale and transfers of the Purchased Assets and the consummation of the other transactions hereunder and all court, registration and filing fees incurred in connection with this Agreement. The Company and Purchaser shall cooperate in the timely making of all filings, returns, reports, and forms as may be required in connection therewith.

11.    SURVIVAL; INDEMNIFICATION.

11.1    Survival of Representations. All of the representations, warranties, covenants and agreements made by the Company in this Agreement or in any attachment, exhibit, certificate, document or list delivered by any of them pursuant hereto shall survive the Closing. Purchaser is relying on the truth and accuracy of the representations and warranties made by the Company, and the Company shall be liable for breach of such representations and warranties without regard to any investigation by Purchaser or any knowledge, information or belief Purchaser has, should have or will have to the effect that such representations and/or warranties may not be, in whole or in part, true, accurate and complete.

11.2    Indemnification.

(a)    The Company shall indemnify, save and hold harmless Purchaser and its Affiliates (collectively, the "Indemnified Parties"), from and against any and all costs, losses, Taxes, Liabilities, obligations, damages, lawsuits, deficiencies, claims, demands, and expenses, including, without limitation, interest, penalties and other losses resulting from any shutdown or curtailment of operations, reasonable attorneys' fees and all amounts paid in investigation, defense or settlement of any of the foregoing (collectively, "Damages"), incurred in connection with, arising out of, resulting from or incident to: (i) any breach of any representation or warranty, or the inaccuracy of any representation or warranty, made by the Company including in the certificates delivered pursuant to Sections 9.1(a) and 9.1(b) without regard to any qualification or limitation based upon any use of the words "material" or "Company's knowledge" or any derivations thereof which shall be disregarded in each case for purposes of determining whether there has been any breach or inaccuracy and the amount of Damages relating thereto; (ii) any breach of any covenant or agreement made by the Company; (iii) any and all Liabilities, including any Liability imposed upon Purchaser by reason of Purchaser's status as transferee of the Purchased Assets, and/or (iv) any and all Taxes of the Company.

(b)    Notwithstanding Section 11.2(a) above, absent Intentional Misrepresentation: (x) any and all claims for Damages under clauses (i) and (ii) of Section 11.2(a) above must be made in writing on or before the Expiration Date, (y) the Company shall have no liability for

-20-

Damages under clauses (i) and (ii) of Section 11.2(a) above unless the aggregate amount of Damages exceeds the Threshold Amount in which case the Company shall be liable for the full amount of Damages from the first dollar thereof, and (z) the aggregate amount of Damages under clauses (i) and (ii) of Section 11.2(a) above for which the Company shall be liable shall be capped at the Holdback Amount.

(c)     The Company hereby authorizes and directs the Company's counsel to reimburse the Indemnified Parties for all Damages from the Holdback Amount.  Such reimbursement/payment shall be made by the Company's counsel within five (5) Business Days after written request by Purchaser unless such period the Company delivers to Purchaser and the Company's counsel a written objection detailing the reasons why the Indemnified Parties are not entitled to such reimbursement/payment.  All remaining Holdback Amount held in trust by the Company's counsel shall be disbursed by the Company's counsel five (5) Business Days after the Expiration Date to the Persons and accounts set forth on Schedule 4.3(a), unless there remains any unresolved claims with respect to Damages in which event 110% of the estimated amount of such unresolved claims as specified by Purchaser shall continue to be held in trust by the Company's counsel until the Company's counsel receives: (x) joint written instructions from Purchaser and the Company directing the disbursement thereof, or (y) a final and non-appealable Order of the Bankruptcy Court directing the disbursement thereof.  All reimbursements of Damages to the Indemnified Parties hereunder shall be deemed to be an adjustment to the Purchase Price.

12.     MISCELLANEOUS.

12.1     Expenses.  Except as otherwise provided in this Agreement, the Company and Purchaser shall each bear its own expenses incurred in connection with the negotiation and execution of this Agreement, and each other agreement, document, and instrument contemplated by this Agreement, and the consummation of the Transactions.

12.2     Injunctive Relief.  Damages at Law may be an inadequate remedy for the breach of any of the covenants, promises, or agreements contained in this Agreement, and, accordingly, either Party shall be entitled to injunctive relief with respect to any actual or threatened breach, including specific performance of such covenants, promises, or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises, or agreements contained in this Agreement, without the need to post bond or other security.  The rights set forth in this Section shall be in addition to any other rights a Party may have at Law or in equity pursuant to this Agreement or otherwise.

12.3     Submission to Jurisdiction; Consent to Service of Process.  Without limiting any Party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes that may arise or result from or be connected with this Agreement, any breach or default hereunder, or the Transactions, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court.  The Parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court with respect to any such dispute and shall receive notices at such locations as indicated in Section 12.7 hereof; provided, however, that if the

-21-

Bankruptcy Case has closed, then the Parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Central District of Los Angeles, California and any appellate court thereof for the resolution of any such claim or dispute. The Parties hereby irrevocably waive, to the fullest extent permitted by applicable Law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the Parties agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law.

12.4    Waiver of Right to Trial by Jury. Each Party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

12.5    Entire Agreement; Amendments and Waivers. This Agreement (including the Schedules and Exhibits hereto) represents the entire understanding and agreement between the Parties with respect to the subject matter hereof. This Agreement can be amended, supplemented, or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification, or waiver is sought. No action taken pursuant to this Agreement, including any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by either Party of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any Party to exercise, and no delay in exercising, any right, power, or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power, or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power, or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by Law.

12.6    Governing Law. This Agreement shall be governed by and construed in accordance with the Laws of the state of New Jersey applicable to contracts made and performed in such state.

12.7    Notices. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand, (ii) when sent by facsimile (upon written confirmation of transmission), (iii) one (1) Business Day following the day sent by overnight courier (with written confirmation of receipt) or (iv) five (5) Business Days following the date of mailing if delivered by registered or certified mail, return receipt requested, in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to the Company, to:

[1]
_____
_____

---

[1] Company to provide address

---

with a copy (which shall not constitute notice) to:

Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Attn:   Jeffrey A. Cooper, Esq.


If to Purchaser, to:

Imperial Toy LLC

16641 Roscoe Place
North Hills, California 91343
Attn:   Peter Tiger
        Art Hirsch

with copies (which shall not constitute notice) to:

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102
Attn:   Mark B. Conlan, Esq.

and

Maron & Sandler
1250 Fourth Street, Suite 550
Santa Monica, California 90401
Attn:   David S. Kyman, Esq.

12.8    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any Law or public policy, then all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the Transactions is not affected in any manner materially adverse to any Party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in an acceptable manner in order that the Transactions are consummated as originally contemplated to the greatest extent possible.

12.9    Assignment.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third-party beneficiary rights in any Person or entity not a Party to this Agreement.  No assignment of this Agreement or of any rights or obligations hereunder may be

made by the Company without the prior written consent of the Purchaser and any attempted assignment without the required consent shall be void.  Purchaser may assign this Agreement to any Affiliate of Purchaser, to any purchaser of all or part of Purchaser's business (whether by merger or otherwise) and/or to any of Purchaser's lenders without the prior written consent of the Company.  No assignment of any obligations hereunder shall relieve the Parties of any such obligations.  Upon any such permitted assignment, the references in this Agreement to the Company or Purchaser shall also apply to any such assignee unless the context otherwise requires.

12.10   <u>Counterparts; Electronic Signature</u>.  This Agreement may be executed in any number of counterparts, all of which, taken together, shall constitute one and the same instrument and any of the Parties or signatories hereto may execute this Agreement by signing any such counterpart. The Parties agree that electronic signatures in the form of handwritten signatures on a facsimile transmittal, scanned and digitized images of a handwritten signature (e.g., scanned document in PDF format), and typed signatures on email transmissions from the Party to be bound, shall have the same force and effect as original manual signatures.

*[signature page follows]*

-24-

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

Company:

ENOR CORPORATION,
a New Jersey corporation

By _____

Purchaser:

IMPERIAL TOY LLC,
a California limited liability company

By _____

### Stockholders Joinder

As a material inducement to Purchaser to enter in the foregoing Agreement, the undersigned, being the holders of 100% of the outstanding shares of the capital stock of the Company, hereby:

1. Consent to and approve of all of the terms and conditions of the foregoing Agreement;

2. Join with the Company in making, and hereby make, all representations and warranties in Section 5 of the foregoing Agreement; and

3. Agree to execute and deliver to the Purchaser at the Closing a Non-Compete, Non-Solicitation and Confidentiality Agreement in the form of Exhibit D to the Agreement.

_____
STEVEN C. UDWIN

_____
DAVID TARICA

-25-

<u>Agreement of Company Counsel</u>

The undersigned agrees to hold the Holdback in trust in a non-interest bearing account in accordance with the foregoing Agreement and not to release or deliver the Holdback or any portion thereof to any Person except as expressly provided for in Section 4.5 or Section 11.2(c) of the foregoing Agreement.

Rabinowitz, Lubetkin & Tully, LLC

By _____

Jeffrey A. Cooper, Esq.

Exhibits

| | | |
|---|---|---|
| Exhibit A | - | Assignment and Assumption Agreement |
| Exhibit B | - | Bill of Sale |
| Exhibit C | - | Trademark, Patent and Other Intellectual Property Assignments |
| Exhibit D | - | Restrictive Covenant Agreement |

Schedules

| | | |
|---|---|---|
| Schedule 2.1(b)(i)A | - | Equipment |
| Schedule 2.1(b)(i)B | - | Molds |
| Schedule 2.1(b)(ii)A | - | Inventory |
| Schedule 2.1(b)(ii)B | - | Golf Caddy component Inventory |
| Schedule 2.1(b)(iii) | - | Proprietary Rights |
| Schedule 2.1(b)(iv) | - | Assumed Contracts |
| Schedule 2.1(b)(ix) | - | Avoidance Actions |
| Schedule 2.2(b) | - | Excluded Inventory |
| Schedule 2.2(c) | - | Excluded Equipment |
| Schedule 2.2(d) | - | Excluded MBI Stamp and Coin Business Assets |
| Schedule 2.2(e) | - | Excluded Other Assets |
| Schedule 4.3(a) | - | Persons and Accounts |
| Schedule 4.3(b) | - | Persons and Accounts |

Section 5 Disclosure Schedules

| | | |
|---|---|---|
| Schedule 5.4(b) | - | Equipment |
| Schedule 5.4(c) | - | Inventory |
| Schedule 5.4(d) | - | Proprietary Rights |

-27-